# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

IDILIA TORRES,

               **Plaintiff,**

   v.                                           **1:07-cv-01649-WSD**

**MICHAEL CHERTOFF, Secretary,
U.S. Department of Homeland
Security;
MICHAEL B. MUKASEY,[1] U.S.
Attorney General;
EMILIO T. GONZALEZ, Director,
U.S. Citizenship and Immigration
Services;
ANN PALMER, Director, Arlington
Asylum Office, U.S. Citizenship and
Immigration Services;
DENISE RIORDAN, Acting District
Director, U.S. Citizenship and
Immigration Services; and
ROBERT MUELLER, Director,
Federal Bureau of Investigation,**

               **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss [2].

---

[1] Plaintiff named former U.S. Attorney General Alberto R. Gonzales as a defendant in the original Complaint [1].  Attorney General Gonzales resigned effective September 17, 2007.  Pursuant to Fed. R. Civ. P. 25(d)(1), the Court has substituted as defendant U.S. Attorney General Michael B. Mukasey.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Idilia Torres ("Plaintiff") is a citizen of El Salvador residing in the United States.  Plaintiff initially entered the United States in 1987 but was deported the same year.  Decl. of Susan F. Aikman [2] at 2.  In February 1990, Plaintiff reentered the United States without inspection.  Id.  She has remained in the United States since 1990.  She was granted temporary protected status ("TPS") in 1991, 2002, and 2006.  On about July 6, 2004, Plaintiff filed an I-881 Application (the "Application") for Suspension of Deportation or Special Rule Cancellation of Removal pursuant to Section 203 of the Nicaraguan Adjustment and Central American Relief Act ("NACARA") of 1997.  Pub. L. 105-100, 111 Stat. 2160, 8 U.S.C. § 1101 note.  Section 203 of NACARA allows certain nationals from Guatemala, El Salvador and former Soviet nations to apply for discretionary relief from deportation under more relaxed terms than is otherwise permitted by U.S. immigration laws.  See 8 C.F.R. § 240.61.  Plaintiff now seeks lawful permanent residence status.

An application seeking adjustment to lawful permanent residence status sets

2

in motion numerous mandatory criminal and national security background checks.[2]

Each of these background procedures must be completed before final adjudication

of an application for adjustment of status.  Aikman Decl. [2] at 2.  These

background procedures include a Federal Bureau of Investigation ("FBI") "name

check," FBI fingerprint check, and a check by the Interagency Border Inspection

System.

The FBI name check phase is the most cumbersome and time-consuming

background procedure.  A name check requires the FBI to compare an applicant's

name against a variety of administrative, criminal, personnel, and other files

inputted into the FBI's Universal Index.  Although the majority of name checks

can be completed within six (6) months, some cases involve complex and/or

highly-sensitive information, and those cases can take substantially longer than six

months to resolve.  In Fiscal Year 2006, the FBI processed more than 3.4 million

name checks.

Plaintiff's Application has been undergoing required national security

---

[2] The Court has been advised of mandatory background procedures through the declarations of Susan F. Aikman [2, 4], a Supervisory Asylum Officer of the Arlington Asylum Office of United States Citizenship and Immigration Services ("USCIS"), and Michael A. Cannon [2], Section Chief of the National Name Check Program Section of the FBI.

investigations since it was filed.  On or about May 12, 2004,[3] USCIS initiated an

FBI name check of Plaintiff.  In February 2006, Plaintiff was interviewed by a

USCIS officer.  Plaintiff awaits the scheduling of a final interview on her

Application, which will not occur until after the FBI completes her name check.

Plaintiff's Application remains pending.

Plaintiff filed this action on July 17, 2007, seeking mandamus relief

compelling Defendants to complete adjudication of her Application.  Plaintiff

contends, among other things, that the over three-year delay since the filing of her

Application is an unlawful withholding or unreasonable delay in violation of the

Administrative Procedures Act, 5 U.S.C. §§ 500 et seq.

Plaintiff alleges subject matter jurisdiction under 28 U.S.C. § 1331, 28

U.S.C. § 1361, 5 U.S.C. § 704, and 8 U.S.C. § 1329.  Defendants move to dismiss

Plaintiff's complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ.

---

[3] There is some dispute as to when the FBI began processing Plaintiff's name check.  The initial Declaration of Susan F. Aikman [2] stated that the FBI began a name check on Plaintiff in February 2006.  The Declaration of Michael A. Cannon [2] and Ms. Aikman's subsequent declaration [4] state instead that the FBI began a name check on Plaintiff in May 2004.  This ambiguity apparently arises because Plaintiff filed applications for temporary protected status and for NACARA relief under two separate alien numbers, which were consolidated in October 2004.  Aikman Decl. [4] at 2.  For the purposes of this Order, the Court accepts that the FBI initiated Plaintiff's name check in May 2004.

P. 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

## II.    DISCUSSION

### A.    Motion To Dismiss For Lack Of Subject Matter Jurisdiction

#### 1.    Standard of Review

An action may proceed in this Court only if federal subject matter jurisdiction exists.  Lifestar Ambulance Serv., Inc. v. United States, 365 F.3d 1293, 1295 (11th Cir. 2004), cert. denied, 543 U.S. 1050 (2005).  Federal Rule 12(b)(1) permits litigants to move for dismissal when the court lacks jurisdiction over the subject matter of the dispute.  Fed. R. Civ. P. 12(b)(1).  "Attacks on subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) come in two forms.  'Facial attacks' on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.  'Factual attacks,' on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered."  Lawrence v. Dunbar, 919 F.2d 1525, 1528-29 (11th Cir. 1990) (internal citations omitted).

**2.      Jurisdiction Under the Administrative Procedures Act (5 U.S.C. § 704)**

The Administrative Procedures Act ("APA"), 5 U.S.C. §§ 500 et seq., authorizes lawsuits by "person[s] suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute . . . ." 5 U.S.C. § 702.  The APA allows judicial review of agency actions where the action is "made reviewable by statute" or the action is a "final agency action for which there is no other adequate remedy in a court." Id. § 704. "[A] preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action." Id.  The APA defines "agency action" to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." Id. § 551(13).  Plaintiff contends the APA confers general jurisdiction on the Court to review the progress of – or in Plaintiff's view the lack of a final decision on – her Application.

The "agency actions" Plaintiff challenges in her complaint are based exclusively on discretionary acts authorized by the Immigration and Nationality Act ("INA").  Section 245 of the INA grants to the Attorney General exclusive

discretion to adjust residence status of aliens who have been admitted into the

United States.  Section 245 provides:

> The status of an alien who was inspected and admitted or paroled into the
> United States . . . may be adjusted by the Attorney General, in his discretion
> and under such regulations as he may prescribe, to that of an alien lawfully
> admitted for permanent residence . . . .

8 U.S.C. § 1255(a);[4] see also Pub. L. 105-110 § 203(c)(5)(C)(ii) (discussing

determinations of the Attorney General).  Neither Section 245 nor any underlying

regulation prescribe the time in which adjudication of a resident alien's status must

occur.  8 U.S.C. § 1255(a); 8 C.F.R. §§ 245.1, 245.2.  Section 203 of NACARA

similarly does not prescribe a time within which the Attorney General must decide

adjustment of status applications.  Pub. L. 105-100 § 203.

    Whether the Court may consider alleged violations of the APA or INA

depends on whether Congress has granted to the Court jurisdiction to do so.  "Only

the jurisdiction of the Supreme Court is derived directly from the Constitution.

---

[4] This grant of authority to the Attorney General has been delegated to the
Department of Homeland Security ("DHS") and to its agency, USCIS.  8 U.S.C. §
1103(a); 6 U.S.C. §§ 271(b), 557; 8 C.F.R. § 245.2.  For the sake of simplicity in
this Order, the Court refers to the Attorney General as the office charged with
adjudicating Plaintiff's adjustment of status application.  It is understood that
actual determinations may be made by USCIS and, ultimately, DHS.  E.g., Li v.
Gonzales, No. 06-5911 (SRC), 2007 WL 1303000, at *3 n.1 (D.N.J. May 3, 2007).

Every other court created by the general government derives its jurisdiction wholly

from the authority of Congress."  Kline v. Burke Constr. Co., 260 U.S. 226, 234

(1922).

Congress has expressly precluded the district courts from exercising

jurisdiction over discretionary actions committed to the Attorney General by the

INA.  Section 242 of the INA provides:

> *Notwithstanding any other provision of law* (statutory or nonstatutory),
> including section 2241 of Title 28, or any other habeas corpus provision, and
> *sections 1361* and 1651 of such title, and except as provided in subparagraph
> (D), *and regardless of whether the judgment, decision, or action is made in
> removal proceedings*, no court shall have jurisdiction to review--
> * * *
> (ii) *any other decision or action* of the Attorney General or the Secretary of
> Homeland Security *the authority for which is specified under this
> subchapter to be in the discretion of the Attorney General or the Secretary of
> Homeland Security*, other than the granting of relief under section 1158(a) of
> this title.

8 U.S.C. § 1252(a)(2)(B) (emphasis added);[5] see also REAL ID Act of 2005, Pub.

L. 109-13, 119 Stat. 231 (effective May 11, 2005);[6] Arias v. U.S. Atty. Gen., 482

---

[5] The only exemption to the jurisdictional prohibition expressed in this
statute grants the Court jurisdiction over "the granting of relief under section
1158(a) of this title," governing grants of asylum.  8 U.S.C. § 1158(a).  Asylum is
not at issue in this case.

[6] Before its 2005 amendment, 8 U.S.C. § 1252(a)(2)(B) read:

F.3d 1281, 1283 (11th Cir. 2007) ("Additionally, pursuant to 8 U.S.C. §

1252(a)(2)(B)(ii), we lack jurisdiction to review a discretionary decision of the

Attorney General or the Secretary of Homeland Security.").  Section 203 of

NACARA expressly confirms Section 242(a)(2)(B)'s applicability to I-881

applications.  Pub. L. 105-100 § 203(c)(5)(C)(ii) ("A determination by the

Attorney General as to whether an alien satisfies the requirements of this clause (i)

is final and shall not be subject to review by any court.  Nothing in the preceding

sentence shall be construed as limiting the application of section 242(a)(2)(B) of

the Immigration and Nationality Act (as in effect after the title III-A effective date)

to other eligibility determinations pertaining to discretionary relief under this

Act.").

　　　Courts around the country have recognized that Section 242 of the INA

reserves adjustment of status decisions to the Attorney General.  E.g. Safadi v.

_____

　　　Notwithstanding any other provision of law, no court shall have jurisdiction
to review--
　　　　* * *
　　　(ii) any other decision or action of the Attorney General the authority for
which is specified under this subchapter to be in the discretion of the
Attorney General, other than the granting of relief under section 1158(a) of
this title.

8 U.S.C. § 1252(a)(2)(B) (May 10, 2005).

Howard, 466 F. Supp. 2d 696, 698 (E.D. Va. 2006) (8 U.S.C. § 1252(a)(2)(B)(ii) is "refreshingly free from ambiguity and its terms are pellucidly clear:  It means that courts are precluded from reviewing *any* discretionary decision or action" of the Attorney General taken under the authority of Section 245); Grinberg v. Swacina, 478 F. Supp. 2d 1350, 1354 (S.D. Fla. 2007); Romanovich v. Gonzales, No. 07-CIV-60224, 2007 WL 1229047, at *1 (S.D. Fla. Apr. 4, 2007); Rogatch v. Chertoff, No. CA 06-541ML, 2007 WL 1160358, at *2 (D.R.I. Apr. 17, 2007); Serrano v. Quarantillo, 2007 WL 1101434, at *2 (D.N.J. Apr. 9, 2007); Patil v. Mueller, No. 1:07cv71 (JCC), 2007 WL 1302752, at *1 (E.D. Va. Apr. 30, 2007); El-Khader v. Perryman, 264 F. Supp. 2d 645, 649 (N.D. Ill. 2003), aff'd 366 F.3d 562 (7th Cir. 2004) (construing prior version of statute); Bugulu v. Gonzales, 490 F. Supp. 2d 965, 967 (W. D. Wis. 2007); Tan v. Chertoff, No. 4:07CV236 HEA, 2007 WL 1880742, at *4 (E.D. Mo. June 29, 2007).

The only remaining question to be addressed in deciding the scope of Section 242's jurisdictional preclusion is to determine the scope of what the Attorney General has been given discretion over by the INA.  That is, does the Court have jurisdiction to determine whether the *pace* at which an application is adjudicated is proper.  The Court concludes it does not.

Plaintiff acknowledges that Section 245 of the INA vests in the Attorney General exclusive authority to decide her Application.  Pl.'s Response to Mot. to Dismiss [3] at 5-6.  Plaintiff contends, however, the over three-year delay in adjudication is effectively a determination not to decide her Application, violating the APA.  See Singh v. Still, 470 F. Supp. 2d 1064, 1068 (N.D. Cal. 2007) ("there is a difference between the [Attorney General's] discretion over *how* to resolve an application and the [Attorney General's] discretion over *whether* it resolves an application") (emphasis in original).  Plaintiff's argument misconstrues the express grant of discretion to the Attorney General found in the INA.

Congress used two specific terms, "actions" and "decisions," when describing what is within the Attorney General's exclusive discretion, and which is thus precluded from district court jurisdiction.  That two terms were used necessarily means that "actions" differ from "decisions."  The Eleventh Circuit "has repeatedly stated that we begin our construction of a statutory provision . . . with the words of the statutory provision . . . . [W]hen the import of words Congress has used is clear we . . . should not . . . undermine the plain meaning of the statutory language."  CBS Inc. v. Primetime 24 Joint Venture, 245 F.3d 1217, 1222 (11th Cir. 2001) (internal citations and quotation marks omitted).  The plain

meaning of "decision" in this context refers to a final decision, or order, of the Attorney General.  Black's Law Dictionary 436 (8th ed. 2004) ("Decision" means "A judicial or agency determination after consideration of the facts and the law "). "Action," therefore, must encompass something other than a final order – an interpretation completely consistent with the definition of "agency action" in the APA.  In § 551(13) of the APA, "agency action" is defined as "the whole or a part of an agency rule, order . . . or failure to act."  5 U.S.C. § 551(13); see also Black's Law Dictionary at 31 ("Action" means "The process of doing something; conduct or behavior."); Safadi, 466 F. Supp. 2d at 699.

If Congress wanted to preclude the courts from exercising jurisdiction only over final agency "decisions," then the word "action" could have been omitted.  It was not, and to give meaning to this other word, the Court, and other courts in this and other circuits, reach the conclusion that "actions" under Section 242 "encompass[] the *entire* process of reviewing an adjustment application, including the completion of background and security checks and the pace at which the process proceeds."  Safadi, 466 F. Supp. 2d at 699; accord Grinberg, 478 F. Supp. 2d 1350; Eldeeb v. Chertoff, No. 8:07-cv-236, 2007 WL 2209231, at *19 (M.D. Fla. July 30, 2007); Romanovich, 2007 WL 1229047, at *2; Levy v. Gonzales, No.

1:07-cv-644-TCB (N.D. Ga. June 18, 2007); <u>Qiu v. Chertoff</u>, 486 F. Supp. 2d 412, 420-21 (D.N.J. 2007); <u>Hu v. Chertoff</u>, No. CIV. S-06-2805 WBS EFB, 2007 WL 1515067, at *4 (E.D. Cal. May 22, 2007); <u>Zhang v. Chertoff</u>, 491 F. Supp. 2d 590, 592-93 (W.D. Va. 2007); <u>Li v. Gonzales</u>, 2007 WL 1303000, at *6; <u>Tan</u>, 2007 WL 1880742, at *4.  This conclusion is consistent with the Court's construction of Section 245 of the INA to broadly preclude district court jurisdiction over what has been granted to the discretion of the Attorney General.  Indeed, the statute specifically grants to the Attorney General the authority to decide adjustment of status applications according to "such regulations as he may prescribe."  8 U.S.C. § 1255(a).  Congress granted to the courts very limited jurisdiction over only those actions specifically set forth in Section 242(e) of the INA, none of which apply to this case.  8 U.S.C. § 1252(e) ("Judicial review of orders under section 1225(b)(1) [of Title 8]").

Plaintiff attempts to avoid the plain meaning of Section 242 of the INA by arguing that the APA itself allows the Court to evaluate the pace of application processing.[7]  Plaintiff relies on Section 706 of the APA, which provides that, "the

---

[7] Although the APA does not confer an independent grant of jurisdiction to the district courts, <u>Califano v. Sanders</u>, 430 U.S. 99, 105 (1977), the Court would have jurisdiction to remedy violations of the APA under the federal question

reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed . . . ."  5 U.S.C. § 706; see also 5 U.S.C. § 555(b) ("With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it.").  Plaintiff contends the over three-year delay on her Application amounts to an "unlawful withholding" or "unreasonable delay."

There is some authority to support this argument.  District courts in this and other circuits[8] exercised jurisdiction to prevent "unreasonable delays" in adjustment of status applications.  E.g., Singh, 470 F. Supp. 2d at 1067-68; Jones v. Gonzales, No. 07-20334-CIV, 2007 WL 1810135 (S.D. Fla. June 21, 2007); Lopez v. Chertoff, No. 6:07-cv-735, 2007 U.S. Dist. LEXIS 68447, at *6 (M.D. Fla. Sept. 17, 2007); Cohen v. Ashcroft, No. 1:05-CV-182 (N.D. Ga. Oct. 14, 2005); Choudry v. Chertoff, No. 1:07-CV-426 (N.D. Ga. Mar. 12, 2007); Belegradek v. Gonzales, No. 1:07-CV-0589-RWS, 2007 WL 3091078 (N.D. Ga. Oct. 18, 2007); Hossain v. Gonzales, No. 07-CV-255-RWS, 2007 WL 3480226

_____

statute.  28 U.S.C. § 1331.

[8] The parties have not identified any 11th Circuit precedent on this issue. The Court's review confirms the lack of appellate guidance.

(N.D. Ga. Nov. 14, 2007).  These decisions reason that the "unreasonable delay" language found in the APA is a general prohibition against any agency actions being unreasonably delayed.  Cf., Burlison v. McDonald's Corp., 455 F.3d 1242, 1247 (11th Cir. 2006) (citing "longstanding canons of statutory construction, including the general principle that courts must not interpret one provision of a statute to render another provision meaningless.").  These decisions are unpersuasive on the facts of this case.

"[A] claim under § 706(1) [of the APA] can proceed only where a plaintiff asserts than an agency failed to take a *discrete* agency action that it is *required to take*."  Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 64 (2004) (emphasis in original).  The INA does not set a time period within which the Attorney General must adjudicate adjustment of status applications.  That fact, coupled with the jurisdictional prohibitions of the INA, express Congress' intent to give to the Attorney General complete discretion over procedures used to grant or deny adjustment of status.  8 U.S.C. § 1255(a); Badier v. Gonzales, 475 F. Supp. 2d 1294, 1297 (N.D. Ga. 2006).  Plaintiff has not alleged that USCIS failed to take discrete action; rather, Plaintiff alleges only that the pace at which USCIS is proceeding must constitute an "unreasonable delay."  This is not then a case of

failure to act, but rather one of failure to act quickly enough for Plaintiff.[9]

Plaintiff's argument is also discredited by earlier provisions of the APA. The APA provides that it "applies, according to the provisions thereof, except to the extent that – (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). Plaintiff's only complaint here is over the pace taken by USCIS in adjudicating her Application. Since the adjudication of adjustment of status applications is plainly committed to agency discretion by the INA, 8 U.S.C. § 1255(a), section 701(a)(2) of the APA expressly precludes jurisdiction. Eldeeb, 2007 WL 2209231, at *19; Safadi, 466 F. Supp. 2d at 700.

The APA also does not apply when "statutes preclude judicial review." 5 U.S.C. § 701(a)(1). In 2005, Congress amended the INA to provide: "Notwithstanding *any other provision of law* . . . no court shall have jurisdiction to

---

[9] The Court is aware of the Supreme Court's dicta in Norton that section 706 of the APA "also authorizes courts to 'compel agency action . . . unreasonably delayed'– but a delay cannot be unreasonable with respect to action that is not required." Norton, 542 U.S. at 63 n. 1. For reasons explained infra, earlier provisions of the APA and the INA expressly prevent courts from exercising jurisdiction over adjustment of status determinations. The Court is not aware of any authority giving a court jurisdiction over the process of adjudication when the court is expressly precluded from exercising jurisdiction over the ultimate decision.

16

review . . . *any* other decision or action of the Attorney General . . . the authority for which is specified under this subchapter to be in the discretion of the Attorney General . . . ."  8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added).  It is difficult for the Court to conceptualize a clearer "preclusion of judicial review" than a preclusion over "any decision or action."

The Court necessarily concludes that the APA does not confer subject matter jurisdiction over this action.  The Court's conclusion is confirmed by a majority of courts which have considered whether the APA confers jurisdiction over adjustment of status determinations.  E.g., Safadi, 466 F. Supp. 2d 696; Eldeeb, 2007 WL 2209231; Woodford v. Ridge, No. 1:04-CV-650 (N.D. Ga. Mar. 18, 2005); Badier, 475 F. Supp. 2d 1294; Hu, 2007 WL 1515067, at *6; Grinberg, 478 F. Supp. 2d at 1355; Romanovich, 2007 WL 1229047, at *2; Rogatch, 2007 WL 1160358, at *2; Serrano, 2007 WL 1101434, at *3; Qiu, 486 F. Supp. 2d at 420-21; Li v. Gonzales, 2007 WL 1303000, at *6.

The Court appreciates Plaintiff's interest in a prompt decision on her Application, yet the Court is also aware of the myriad security threats this nation has faced and will continue to face.  The federal government dedicated considerable resources to national security and is acting carefully and cautiously on

17

applications of those aliens who wish to remain here permanently.  Recent events and investigations of which this Court is aware underscore that threats to the United States can exist anywhere and with anyone.  To the extent care is being taken in reviewing adjustment of status applications, processing delays in a small subset of cases are a necessary result of the environment in which we live.[10]  While the Court would like all applications to be processed immediately, it is not for the Court to create its own jurisdictional review authority or to second-guess those officials entrusted with processing applications.  That function was reserved for Congress by the Constitution.  U.S. Const. art. III § 1.

### 3.     Federal Question Jurisdiction (28 U.S.C. § 1331)

Plaintiff next contends the Court has jurisdiction under 28 U.S.C. § 1331.[11] However, Section 242(a)(2)(B)(ii) of the INA prevents the Court from exercising jurisdiction over actions committed in the INA to the discretion of the Attorney

---

[10]  It seems better to allow the Attorney General to make determinations once the background procedures are completed than to force precipitous – and perhaps unfavorable – determinations upon the applicant by mandating expedient action.

[11]  28 U.S.C. § 1331 provides:

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

General.  8 U.S.C. § 1252(a)(2)(B)(ii).  For reasons already explained, the INA

commits adjustment of status determinations to the Attorney General.  Section 242

of the INA therefore precludes jurisdiction in the district courts.  Even without

Section 242 of the INA, the APA is the only statute allegedly violated in this case,

and the APA does not apply when "agency action is committed to agency

discretion by law."  5 U.S.C. § 701(a)(2).  Here, a federal agency has complete

discretion over adjustment of status applications.  Since the APA does not apply,

Plaintiff has no cause of action arising under federal law.

### 4.    Jurisdiction Under 28 U.S.C. § 1361

28 U.S.C. § 1361 states: "The district courts shall have original jurisdiction

of any action in the nature of mandamus to compel an officer or employee of the

United States or any agency thereof to perform a duty owed to the plaintiff."  "The

remedy of mandamus is a drastic one, to be invoked only in extraordinary

situations."  In re BellSouth Corp., 334 F.3d 941, 953 (11th Cir. 2003) (internal

quotation marks omitted).  "The test for jurisdiction is whether mandamus would

be an appropriate means of relief."  Jones v. Alexander, 609 F.2d 778, 781 (5th

Cir. 1980), reh'g denied, 613 F.2d 314 (11th Cir. 1980), cert. denied, 449 U.S. 832

(1980).[12]  "Mandamus relief is only appropriate when: (1) the plaintiff has a clear

right to the relief requested; (2) the defendant has a clear duty to act; and (3) no

other adequate remedy is available."  Cash v. Barnhart, 327 F.3d 1252, 1258 (11th

Cir. 2003) (internal quotation marks omitted).  A mandamus action "is intended to

provide a remedy for a plaintiff only if he has exhausted all other avenues of relief

and only if the defendant owes him a clear nondiscretionary duty."  Heckler v.

Ringer, 466 U.S. 602, 616 (1984).

Mandamus jurisdiction does not exist here.  Section 242 (a)(2)(B) of the

INA *expressly* exempts the mandamus statute from conferring jurisdiction in the

district courts over discretionary acts of the Attorney General.  8 U.S.C. §

1252(a)(2)(B) ("Notwithstanding any other provision of law . . . including . . .

sections 1361 and 1651 of [Title 28] . . . no court shall have jurisdiction to review .

. . any other decision or action of the Attorney General . . . .").

Plaintiff also has not satisfied the elements necessary to vest jurisdiction

over a mandamus action in the Court.  Plaintiff has no "clear right to the relief

requested."  Plaintiff requests immediate adjudication of her Application.  No part

---

[12] Decisions of the former Fifth Circuit decided prior to October 1, 1981 are
binding precedent in the Eleventh Circuit.  Bonner v. City of Prichard, 661 F.2d
1206, 1209 (11th Cir. 1981) (en banc).

of the INA grants her that right.  Patil, 2007 WL 1302752, at *2.  Section 245

conspicuously lacks binding or even suggested timeframes for agency adjudication.

Compare 8 U.S.C. § 1447(b) (120-day timeframe to adjudicate naturalization

applications after examination).  Plaintiff contends she has a "clear right" to

adjudication within a "reasonable time."  Whether a passage of time is

"reasonable" is itself a subjective, merits-based determination, not a "clear right."

What Plaintiff essentially asks the Court to do is order USCIS to move her

Application to the head of a long line of other adjustment of status applications.

Plaintiff does not have a "clear right" to such preferential treatment.

Plaintiff also has not shown a "clear duty to act."   Even assuming Plaintiff's

allegations as true, Jones, 609 F.2d at 781, Plaintiff shows that the Attorney

General and his delegates have only a "clear duty" to adjudicate I-881 applications.

See Bugulu, 490 F. Supp. 2d at 967.  Defendants are in the process of adjudicating

Plaintiff's Application; their duty thus is being met.

### 5.    Jurisdiction under the INA (8 U.S.C. § 1329)

The INA grants limited jurisdiction to the district courts for actions brought

by the United States.  The INA provides: "The district courts of the United States

shall have jurisdiction of all causes, civil and criminal, brought by the United

States that arise under the provisions of this subchapter."  8 U.S.C. § 1329.

Plaintiff's attempt to fit her case under this provision is unavailing since, as the

statute's text unambiguously states, the district courts have jurisdiction only over

actions "brought by the United States."  Id.  Private causes of action do not fall

under this section.  Diallo v. Reno, 61 F. Supp. 2d 1361, 1366 (N.D. Ga. 1999).

For the Court to have jurisdiction over Plaintiff's private suit, Plaintiff must rely on

some other congressional statute.  As explained above, no other statute vests the

Court with jurisdiction over this case.

**B.     Motion To Dismiss For Failure To State A Claim Upon Which
Relief Can Be Granted**

### 1.  Standard of Review

Federal Rule 12(b)(6) permits litigants to move to dismiss complaints which

fail to state a claim upon which relief can be granted as a matter of law.  Fed. R.

Civ. P. 12(b)(6).  In considering a defendant's motion to dismiss, the Court accepts

plaintiff's allegations as true, Hishon v. King & Spalding, 467 U.S. 69, 73 (1984),

and construes the complaint in plaintiff's favor.  Duke v. Cleland, 5 F.3d 1399,

1402 (11th Cir. 1993), reh'g denied, 13 F.3d 411 (11th Cir. 1994).  To survive a

motion to dismiss, a complaint need not contain "detailed factual allegations," but

must "give the defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (internal quotation marks omitted). Ultimately, the complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." Id. at 1974.

Even if the Court had jurisdiction over this action, Plaintiff's allegations do not claim any recognized cause of action. No provision of the INA compels USCIS to decide adjustment of status applications in any particular time. See 8 U.S.C. § 1255(a). Plaintiff relies instead on provisions of another statute, the APA, which purportedly requires agency decisions within a "reasonable time." Plaintiff supports her argument with cases holding that long-delayed adjustment of status applications state valid claims under the APA. E.g., Cohen v. Ashcroft, No. 1:05-CV-0182-CC (N.D. Ga. Oct. 14, 2005); Choudhry v. Chertoff, No. 1:07-CV-426-CAP (N.D. Ga. Mar. 12, 2007); Haidari v. Frazier, No. 06-3215, 2006 WL 3544922, at *5-6 (D. Minn. Dec. 8, 2006); Singh, 470 F. Supp. 2d at 1067-70; Elkhatib v. Bulter, No. 04-22407, 2005 WL 5226742, at *1 (S.D. Fla. June 6, 2005); Gelfer v. Chertoff, No. C 06-06724 WHA, 2007 WL 902382, at *2 (N.D. Cal. Mar. 22, 2007); Belegradek, 2007 WL 3091078; Hossain, 2007 WL 3480226.

The Court finds those decisions unpersuasive. The text of both the APA and

23

the INA indicates that the Attorney General has been given complete discretion

over adjustment of status determinations, including the pace of adjudication.  The

APA also does not apply to adjustment of status determinations, because

provisions of the INA "preclude judicial review" and because "agency action is

committed to agency discretion by law."  5 U.S.C. § 701(a).  The Court's

conclusion is in line with the majority of district courts around the country holding

that plaintiffs with delayed adjustment of status applications do not state valid

claims under the APA.  E.g., Eldeeb, 2007 WL 2209231, at *19; Badier, 475 F.

Supp. 2d at 1297-98; Safadi, 466 F. Supp. 2d at 700; Romanovich, 2007 WL

1229047, at *2; Grinberg, 478 F. Supp. 2d at 1355; Levy v. Gonzales, No. 1:07-cv-

644-TCB (N.D. Ga. Jun. 18, 2007); Woodford v. Ridge, No. 1:04-CV-0650-CAP

(N.D. Ga. Mar. 18, 2005).

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Motion to Dismiss [2] filed by

defendants Michael B. Mukasey, Michael Chertoff, Emilio Gonzalez, Ann Palmer,

Denise Riordan, and Robert Mueller is **GRANTED**.

**SO ORDERED** this 30th day of November 2007.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE